IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ROOSEBELT BALBOA; BERNALDO BALDONADO; ROLANDO BALDONALDO; FLORDELITO BASOL; FRANCISCO BOCTOT, JR.; GEMMA BOCTOT; DANNY BUMANGLAG; ANSELMA CABICO; ROGELIO CANTORNA; AMELIA COMA; LUZVIMINDA CUANANG; EDWIN DE LOS SANTOS; REYMUNDA JARAMILLO; FU LEE; MINA MACABEO; MAURO MANZANO; JASMINE MARBOU; JONAS MENOR; JUVE MIJARES; NOEL MIJARES; BALTAZAR NAVOR; RONALDO OJEDA; RONALDO ONGCOY; ARNEL PAJAS; GLORIA PALMA; ARTEMIA PATAGUE; ANDRES RAMENTO; CHRISTINA RAMIREZ; ASIS RAQUINIO; JAYSON RAQUINO; MOJEEB RINTON; FEDERICO SAHAGUN; MELANIE (RIVERA) SALVADOR; RUEL SALVADOR; GENEROSA TULIAO,<br><br>        Plaintiffs,<br><br>    v.<br><br>HAWAII CARE AND CLEANING, INC.,<br><br>        Defendant. | ) Civ. No. 14-00009 ACK-RLP<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

For the following reasons, the Court hereby

GRANTS Defendant Hawaii Care and Cleaning, Inc.'s Motion for

Summary Judgment.

**FACTUAL BACKGROUND**[1]

Defendant Hawaii Care and Cleaning, Inc. ("HCC")
contracted with Hilton Hotels Corporation, dba Hilton Hawaiian
Village ("Hilton") to perform certain cleaning services at Hilton
beginning in June of 2004. (Def.'s CSF ¶ 1; Pl.'s CSF ¶ 1.)
Plaintiffs were employees of HCC during the relevant time period
and were apparently assigned by HCC to work at Hilton, performing
the services set forth in the services agreements between Hilton
and HCC.

Specifically, HCC entered into three written agreements
with Hilton beginning in June 2004 (collectively referred to as
the "Services Agreements"). The agreements are: (1) a Public Area
& Window Cleaning Contract effective June 2004 to May 2007,
(Def.'s CSF, Ex. A); (2) a Kitchen Night Cleaning Services
Agreement effective June 2004 to May 2007, (Id., Ex. B); and (3)
a Services Agreement effective August 2009 to March 31, 2011,
(Id., Ex. D.) After the 2009 Services Agreement expired, HCC and
Hilton did not sign another written contract until July of 2013;
however, during the time between written contracts, the parties
operated on a month-to-month basis under the terms of the 2009
Agreement until the new contract was signed. (Pl.'s CSF, Ex. 15

---

[1] The facts as recited in this Order are for the purpose of
disposing of the current motion and are not to be construed as
findings of fact that the parties may rely on in future
proceedings.

(Twyman Depo.) at 67.)

The Public Area & Window Cleaning Contract and the
Kitchen Night Cleaning Services Agreement both contain clauses
stating: "[t]his Agreement is by and between Hilton and
Contractor and there are no other third party beneficiaries to
this Agreement." (Def.'s CSF, Ex. A at § 13; Id., Ex. B at § 13.)
Similarly, the August 2009 Services Agreement has a clause
stating: "[t]his Agreement is by and between Hotel and Contractor
and, other than as specifically set forth in Section F, there are
no other third party beneficiaries to this Agreement." (Id., Ex.
D at § 14.) Section F, in turn, states that Hilton affiliates are
third party beneficiaries of the agreement. (Id. §§ F, 15.)

Hilton has a collective bargaining agreement ("CBA")
with Unite Here Local 5 ("Local 5"), pursuant to which Hilton
must require all of its contractors, including HCC, to pay
employees who perform bargaining unit work at least the rates
specified in the Hilton CBA. (Compl. ¶¶ 42-43; Mot. at 1.)
Plaintiffs admit that they were not bargaining unit members of
Local 5 at any relevant time, and were not covered by the CBA
between Hilton and Local 5. (Pl.'s CSF ¶ 7.)

At some point in 2006, Local 5 initiated a grievance
with Hilton under the CBA, presumably involving wages paid to
subcontractors, including HCC. To resolve the grievance, HCC was
asked to execute an addendum specifically providing that HCC

3

would adhere to the rates specified in the Hilton CBA for employees performing bargaining unit work, and further providing that HCC would indemnify Hilton should future grievances arise over HCC's failure to adhere to the addendum. (Def.'s CSF, Allen Decl. ¶ 7.)

Thus, on December 4, 2006, Hilton and HCC executed an Addendum Agreement (the "2006 Addendum") to the Public Area & Window Cleaning Contract to provide that HCC comply with the subcontracting clause of CBA between Hilton and Local 5. The 2006 Addendum states, *inter alia*, that "[i]t is the Contractor's responsibility to follow all requirements of Sections 6.3B, 6.3D and 6.3E ("Subcontracting Clause") of the collective bargaining agreement ("CBA") (portions of which are currently in a memorandum of agreement) between Local 5 of Unite/HERE! and Owner as to all work to be performed under the Services Agreement." (Def.'s CSF, Ex. C at ¶ 2.) It also states that the standard wage schedule (taken from the CBA) will be applicable to HCC until the expiration of the Agreement on May 31, 2007. (Id. ¶ 1.) Pursuant to the 2006 Addendum, HCC paid its employees according to the minimum union rate schedule on two occasions: in November of 2006 and in May of 2007. (Pl.'s CSF, Ex. 1 (Allen Depo.) at 24.) HCC was compensated for the November 2006 wage increase through a price increase from Hilton, but William Allen, the President of HCC, testified that he was not sure if HCC was so compensated for

the May 2007 wage increase. (Id. at 30.) Mr. Allen testified that, thereafter, Hilton did not further compensate HCC for any union wage rate increases, and, thus, HCC did not give any further wage increases to its employees based on the union wage rates between 2007 and 2013. (Id. at 26-28, 32, 51.) The 2006 Addendum contained no language altering or addressing the third party beneficiary language in the original contract.

Plaintiffs assert in the instant suit that HCC failed to pay them the bargaining unit wage rates specified in the Hilton CBA, as they allege HCC was required to do by the 2006 Addendum and 2009 Services Agreement. (See generally Compl.) Specifically, Plaintiffs allege that HCC failed to pay the required wage rates during the time period from December 7, 2007 to June 30, 2013.

## PROCEDURAL BACKGROUND

On December 6, 2013, Plaintiffs filed a Complaint in the Circuit Court of the First Circuit, State of Hawaii, alleging three causes of action against Defendant Hawaii Care and Cleaning and Doe Defendants 1-50. (Doc. No. 1, Ex. A.) On January 8, 2014, HCC timely removed the action to this Court pursuant to 28 U.S.C. §§ 1441, 1446, 1331, 1367, and 29 U.S.C. § 185(a). (Doc. No. 1.)

The Complaint asserts three causes of action: (1) a third party beneficiary breach of contract claim for breach of the Services Agreements between the Hilton and HCC; (2) a

5

statutory claim for withheld wages that Plaintiffs claim were owing under the Services Agreements; and (3) a claim for unjust enrichment. (Id., Ex. A.) Plaintiffs seek special, general, double, trebel, punitive, and exemplary damages, as well as back pay, front pay, prejudgment interest, and lost employment benefits. (Id. at 10.)

On August 14, 2014, HCC filed the instant Motion for Summary Judgment, along with a concise statement of facts and supporting exhibits. (Doc. Nos. 17 & 18.) On April 2, 2015, Plaintiffs filed their memorandum in opposition to the motion, supported by a concise statement of facts and a number of exhibits. (Doc. Nos. 34 & 35.) HCC filed its reply on April 9, 2015. (Doc. No. 36.) A hearing on the motion was held on April 23, 2015.[2/]

## STANDARD

Summary judgment is appropriate when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

---

[2/] The hearing on the instant motion was continued three times at the request of Plaintiffs because of a discovery dispute between the parties. (Doc. Nos. 21, 23, 26.)

251–52 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If that burden has been met, the nonmoving party must then come forward and establish the specific material facts in dispute to survive summary judgment. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588 (1986). The Court must draw all reasonable inferences in favor of the nonmoving party. Id. at 587.

In supporting a factual position, a party must "cit[e] to particular parts of materials in the record . . . or show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 585. "[T]he requirement is that there be no genuine issue of material fact . . . . Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 247–48 (emphasis in original). Also, "[t]he mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient[]" to defeat

7

summary judgment. <u>Triton Energy Corp. v. Square D Co.</u>, 68 F.3d 1216, 1221 (9th Cir. 1995). Likewise, the nonmoving party "cannot defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements." <u>Hernandez v. Spacelabs Med. Inc.</u>, 343 F.3d 1107, 1112 (9th Cir. 2003).

## **DISCUSSION**

In the instant motion, HCC seeks summary judgment as to all of the claims in the Complaint. The Court will address the viability of each claim in turn.

## I.  Breach of Contract

As their first cause of action, Plaintiffs bring a breach of contract claim, asserting that they are third party beneficiaries of the Services Agreements between HCC and Hilton. (Compl. ¶¶ 46-50.) Specifically, Plaintiffs assert that they were intended third party beneficiaries of the Services Agreements, that HCC breached those agreements by failing to pay the bargaining unit wage rates to Plaintiffs, and that HCC is therefore liable to Plaintiffs for the breach. (<u>Id.</u>) HCC asserts in the instant motion that Plaintiffs cannot bring an action to enforce the Services Agreements because Plaintiffs were not intended third party beneficiaries of the agreements. The Court agrees.

Generally, "third parties do not have enforceable contract rights. The exception to the general rule involves

intended third-party beneficiaries." <u>Pancakes of Hawaii, Inc. v.</u>
<u>Pomare Props. Corp.</u>, 944 P.2d 97, 106 (Haw. App. 1997); <u>see also</u>
<u>Ass'n of Apartment Owners of Newtown Meadows ex rel. its Bd. of</u>
<u>Directors v. Venture 15, Inc.</u>, 167 P.3d 225, 262 (Haw. 2007), as
corrected on denial of reconsideration (Sept. 20, 2007); <u>Blair v.</u>
<u>Ing</u>, 21 P.3d 452, 473 (Haw. 2001).

A third party beneficiary is "one for whose benefit a
promise is made in a contract but who is not a party to the
contract." <u>Pancakes of Hawaii</u>, 944 P.2d at 106 (quoting Black's
Law Dictionary 1480 (6th ed. 1990)). "The rights of the third
party beneficiary must be limited to the terms of the promise,"
and this promise "may be express or it may be implied from the
circumstances." <u>Remington Typewriter Co. v. Kellogg</u>, 19 Haw. 636,
640 (1909) (internal quotation marks and citation omitted). "[A]
prime requisite to the status of 'third party beneficiary' under
a contract is that the parties to the contract must have intended
to benefit the third party, who must be something more than a
mere incidental beneficiary." <u>Hunt v. First Ins. Co. of Hawaii</u>,
922 P.2d 976, 980 (Haw. App.), cert. dismissed, 925 P.2d 374
(Haw. 1996)).

Here, as HHC points out, the Services Agreements all
contain express provisions stating that the contracting parties
do not intend to create any third party beneficiaries to the
agreements. Specifically, the Public Area & Window Cleaning

Contract and the Kitchen Night Cleaning Services Agreement both contain clauses stating: "[t]his Agreement is by and between Hilton and Contractor and there are no other third party beneficiaries to this Agreement." (Def.'s CSF, Ex. A at § 13; Id., Ex. B at § 13.) Similarly, the August 2009 Services Agreement states: "[t]his Agreement is by and between Hotel and Contractor and, other than as specifically set forth in Section F, there are no other third party beneficiaries to this Agreement." (Id., Ex. D at § 14.) Section F, in turn, states that Hilton affiliates are third party beneficiaries of the agreement. (Id. §§ F, 15.) Indeed, the 2009 Services Agreement demonstrates that, when Hilton and HCC did intend to create third party beneficiaries, they did so unambiguously by stating that Hilton's affiliated entitles "are intended third party beneficiaries." (Id.)

The Court concludes that the express language in the Services Agreements stating that the contracting parties did not intend to make Plaintiffs third party beneficiaries is controlling here. See Laeroc Waikiki Parkside, LLC v. K.S.K. (Oahu) Ltd. Partnership, 166 P.3d 961, 975 n.15 (Haw. 2007) (noting that, even if the plaintiffs were claiming to be third party beneficiaries (which they conceded they were not), any such argument would fail because the express terms of the contract at issue stated that the contracting parties did not intent to

create a third party beneficiary); GECCMC 2005-C1 Plummer St.
Office Ltd. Partnership v. JPMorgan Chase Bank, Nat. Ass'n, 671
F.3d 1027, 1035 (9th Cir. 2012) ("[The] 'no third-party
beneficiary' clause stacks the deck against [plaintiff's] claims
at the outset."); McKesson HBOC, Inc. v. N.Y. State Common
Retirement Fund, Inc., 339 F.3d 1087, 1091-92 (9th Cir. 2003)
(holding that contract language stating that the agreement was
"not intended to confer upon any person other than the parties
any rights and remedies" defeated any claim of a third party
beneficiary); Lucent Tech., Inc. v. Gateway, Inc., Civ. No.
02-2060-B(CAB), 2007 WL 2900484, at *12 (S.D. Cal. Oct. 1, 2007)
("The best evidence of whether contracting parties intended their
contract to benefit third parties remains the language of the
contract itself[,]" (internal quotes omitted)).

        Plaintiffs have not shown that, notwithstanding the
express provisions stating otherwise, the Service Agreements
represented an agreement between HCC and Hilton "to bestow a
benefit upon [Plaintiffs.]" See Blair, 21 P.3d at 460. Indeed,
Plaintiffs have presented no evidence to suggest that they were
anything more than "incidental" beneficiaries of an agreement
that was entered into for the purpose of mutually benefitting HCC
and Hilton. See GECCMC 2005-C1, 671 F.3d at 1033 ("The fact that
a third party may incidentally benefit under a contract does not
confer on him the right to sue; instead, the parties must have

11

intended to benefit the third party."). Thus, based on the clear language of the contracts, the Court concludes that there is no factual dispute that Plaintiffs were not third party beneficiaries to the Services Agreements.[3]

Plaintiffs nevertheless argue that, by signing the 2006 Addendum,[4] HCC and Hilton evinced an intention to benefit Plaintiffs by agreeing to the bargaining unit wage rate schedule. (Opp'n at 5-6.) Plaintiffs point out that the indemnification provision in the 2006 Addendum states that HCC will indemnify Hilton for any claims arising out of any failure by HCC to comply with the terms of the Addendum. (Def.'s CSF, Ex. C at § 4.) Plaintiffs assert that this indicates that the contracting parties anticipated that third parties would be able to bring claims seeking to enforce the bargaining unit wage rate schedule.

---

[3] The Court need not address HCC's arguments that any claims under the Hilton CBA are preempted by Section 301 of the Labor Management Relations Act, because Plaintiffs state that they only seek to bring their breach of contract claim as to the Services Agreement, and they do not claim to be third party beneficiaries of the Hilton CBA. (Opp'n at 8.)

[4] The parties dispute whether the 2006 Addendum applied to all of the Services Agreements, or only to the 2004 Public Area & Window Cleaning Contract. By its terms it appears the Addendum only applies to the latter.(See Def.'s CSF, Ex. C at 1.) Moreover, the 2006 Addendum states expressly that it expired on May 31, 2007. (Id. ¶ 1.) Thus, there is no way it could have been incorporated into the 2009 Services Agreement. Regardless, it is immaterial to the Court's analysis of the first cause of action whether the bargaining unit wage rates were in place only until May of 2007 or continued thereafter, because the Court finds that Plaintiffs are not third party beneficiaries to any of the Services Agreements.

(Opp'n at 5.) The Court disagrees for several reasons.

First, the 2006 Addendum contains no language altering or addressing in any way the express provision in the Public Area & Window Cleaning Contract stating that the agreement creates no third party beneficiaries. (<u>See</u> Def.'s CSF, Ex. C.) Thus, as discussed above, the express terms of the Services Agreements foreclose any argument that Plaintiffs are third party beneficiaries.

Further, the indemnification provision in the 2006 Addendum does not indicate an intention to nevertheless create a third party beneficiary. The indemnification provision obligates HCC to pay for any penalties or other claims that Hilton might incur for a violation of Hilton's CBA until the termination of the services agreement on May 31, 2007. (<u>Id.</u> ¶ 4.) The provision is clearly intended to protect Hilton from claims brought by the Local 5 union, not those brought by non-union workers such as Plaintiffs. The purpose of the subcontracting clause of the Hilton CBA is to discourage Hilton from hiring non-union workers by increasing the cost of doing so. (<u>See</u> Def.'s CSF, Ex. E ¶ 6.3A.) The CBA therefore obligates Hilton to require its subcontractors to pay wages at a certain level when it subcontracts bargaining unit work to non-union workers. (<u>Id.</u>) A breach of the wage provisions of the CBA would give rise to a claim by Local 5 against Hilton. Hilton's penalty for violation

of the wage rates in the CBA is payment of a monetary penalty to the union (specifically, to the A.F.L. Hotel and Restaurant Workers Trust Fund). (<u>Id.</u>, Ex. E ¶ 6.3E.) Thus, Hilton entered into the 2006 Addendum with HCC to protect itself from any such claims. (<u>See</u> Pl.'s CSF, Ex. 1 (Allen Depo.) at 32 (discussing HCC's agreement to the wage rate schedule and stating that it "was important to [Hilton] and their best interest in not getting in trouble with the union."); Def.'s CSF, Allen Decl. ¶ 7.)

Indeed, the January 2007 Memorandum Agreement between Hilton and Local 5 indicates that Local 5 withdrew a previous grievance against Hilton (for contracting with HCC in violation of the subcontracting clause of the CBA) in exchange for Hilton applying the subcontracting clause to its Public Area & Window Cleaning Contract with HCC. (Def.'s CSF, Ex. E (CBA) ¶ 6.3A; Ex. F (Memorandum Agreement) at 6.) The indemnification provision in the 2006 Addendum is therefore clearly intended to protect Hilton from any further claims by the union arising out of HCC's failure to adhere to the CBA wage rate provisions. (<u>Id.</u>, Ex. C.)

The Court therefore concludes that the indemnification provision in the 2006 Addendum does not, as Plaintiffs argue, indicate an intent on the part of Hilton and HCC to acknowledge that non-union third parties may enforce the 2006 Addendum. Rather, it simply protects Hilton from liability should HCC breach the wage rate provisions in the CBA. Thus, Plaintiffs are

14

in no way intended beneficiaries of the 2006 Addendum. While the contract may have granted them the "incidental" benefit of higher wages, it did not express an intent to specifically confer third party beneficiary rights upon them.[5/]

---

[5/] Similarly, the bid proposals and other correspondence between Hilton and HCC in the period between the expiration of the 2009 Services Agreement (in 2011) and the signing of a new agreement (in 2013) likewise do not evince an intent to establish Plaintiffs as third party beneficiaries. While the numerous exhibits attached to Plaintiffs' Concise Statement of Facts contain discussions between HCC and Hilton regarding increases in HCC's pricing schedules to reflect increases in the union wage rates, Hilton's Pete Twyman testified in his deposition that, after the 2009 Services Agreement expired, the parties continued to operate under its terms on a month-to-month basis until a new contract was signed in 2013. (Pl.'s CSF, Ex. 15 at 67.) Thus, the express provision in the 2009 Services Agreement stating that no third party beneficiaries were created by the agreement (other than Hilton affiliates) remained in effect during the period between 2011 and 2013. (See Pl.'s CSF, Ex. 15 at 67.) The Court notes that Exhibit C to the 2009 Services Agreement contains a pricing schedule and the following statement: "Price schedule effective April 1, 2010 through March 31, 2011 will be in line with the salary increase (if any) based on the Local 5 Union negotiation in March 2010." (Def.'s CSF, Ex. D at Ex. C.) This statement alone, however, does not evince an intent to designate Plaintiffs as third party beneficiaries such that it overcomes the express language of the contract restricting the creation of third party beneficiaries.

Arguably, all of these exhibits containing contract discussions between HCC and Hilton from 2011 to 2013, indicate an understanding that HCC's pricing would include union wage rate increases, and Hilton would compensate HCC for the same; however, as discussed herein, there is no evidence that any of the bids were actually accepted. William Allen's declaration and deposition testimony reflect that Hilton never compensated HCC for union wage rate increases after 2007. (Def.'s CSF, Allen Decl.; Pl.'s CSF, Ex. 1.) Thus, HCC never received from Hilton an additional amount for union wage rate increases which could be characterized as being held in constructive trust for the benefit of HCC's employees under a claim of unjust enrichment (although, as noted below, such a claim would be barred by the express

(continued...)

In sum, the Court concludes that Plaintiffs are not intended third party beneficiaries to the Services Agreements or to the 2006 Addendum. Thus, while Hilton (a contracting party) may be entitled to bring a breach of contract claim for the alleged violation of the wage provision, Plaintiffs clearly may not do so. The Court therefore GRANTS the motion as to Plaintiff's first cause of action.

## II. Withholding of Wages in Violation of Hawaii's Wage and Hour Law

In their second cause of action, Plaintiffs assert that HCC's alleged failure to pay the wages mandated by the 2006 Addendum violated Chapter 388 of the Hawaii Revised Statutes. (Compl. ¶¶ 51-55.)

Haw. Rev. Stat. § 388-6 states that: "No employer may deduct, retain, or otherwise require to be paid, any part or portion of any compensation earned by any employee except where required by federal or state statute or by court process or when such deductions or retentions are authorized in writing by the employee." Section 388-11 provides an employee or class of employees with a cause of action to recover unpaid wages. Pursuant to § 388-10(a), an employer who fails to pay wages in violation of any provision of Chapter 388 without equitable

---

[5]/(...continued)
agreement of the parties) or as intended third party beneficiaries (a claim that, as discussed herein, is barred by the express language of the contracts between HCC and Hilton).

16

justification is liable to the employee for double damages.

Importantly, however, Plaintiffs may only recover under Hawaii's Wage and Hour Law for the willful withholding of wages that are legally due. See Misc. Service Workers, Drivers & Helpers, Teamsters Local No. 427 v. Philco-Ford Corp., WDL Div., 661 F.2d 776, 783 (9th Cir. 1981) (stating that Chapter 388 "serve[s] to prevent the employer from withholding sums or benefits to which the employee has rights by virtue of his contract with his employer . . .."). Here, Plaintiffs do not seek to recover withheld wages pursuant to a contractual arrangement between them and HCC. Indeed, there appears to be no dispute that Plaintiffs were paid the wages that were agreed upon between them and HCC. Nor, as discussed above, can they assert a legal right (as third party beneficiaries) to the amounts allegedly withheld by virtue of HCC's failure to pay the bargaining unit wage rates as set forth in the 2006 Addendum.

Thus, because Plaintiffs seek to recover wages to which they have failed to demonstrate that they are legally entitled, they cannot bring a statutory claim under Chapter 388. See id.; see also Casumpang v. ILWU Local 142, 121 P.3d 391, 401 (Haw. 2005) (affirming dismissal of a Chapter 388 claim where the plaintiff sought payment for unused vacation, which the court determined did not constitute "wages" because an employee is not entitled to payment for unused vacation leave); Timpe v. WATG

<u>Holdings Inc.</u>, Civ. No. 07-00306 JMS-KSC, 2008 WL 2355611, at *7
(D. Haw. June 10, 2008) (holding that plaintiff could not bring a
Chapter 388 claim to recover benefits to which she was not
entitled). The Court therefore GRANTS the motion as to
Plaintiffs' second cause of action.

## III. Unjust Enrichment

Finally, Plaintiffs' third count asserts that HCC's
failure to pay the bargaining unit wage rates constitutes unjust
enrichment under Hawaii common law. (Compl. ¶¶ 56-60.) To recover
on an unjust enrichment claim, a plaintiff must prove: (1) the
defendant received a benefit without adequate legal basis; and
(2) unjustly retained the benefit at the expense of the
plaintiff. <u>Chapman v. Journal Concepts, Inc.</u>, 2008 WL 5381353, at
*21 (D. Haw. 2008) (citing <u>Small v. Badenhop</u>, 701 P.2d 647, 654
(Haw. 1985); <u>Durrette v. Aloha Plastic Recycling, Inc.</u>, 100 P.3d
60, 61 (Haw. 2004). Unjust enrichment is a "broad and imprecise
term." <u>Durrette</u>, 100 P.3d at 72 (internal citation and quotation
marks omitted). In reviewing unjust enrichment claims, courts
must be guided by the "underlying conception of restitution, the
prevention of injustice." <u>Id.</u>

As an initial matter, HCC argues that Plaintiffs'
unjust enrichment claim is barred in the face of an express
contract covering the subject of the claim. The Court agrees.
Generally, "[a]n action for unjust enrichment cannot lie in the

18

face of an express contract." Porter v. Hu, 169 P.3d 994, 1006 (Haw. App. 2007); State Farm Fire & Cas. Co. v. Chung, 882 F. Supp. 2d 1180, 1192 (D. Haw. 2012). Thus, "[w]here the parties to a contract have bargained for a particular set of rights and obligations, all claims involving those express rights and obligations properly lie in contract law and not in equity." Keahole Point Fish LLC v. Skretting Canada Inc., 971 F. Supp. 2d 1017, 1040 (D. Haw. 2013).

Here, HCC asserts, and Plaintiffs do not dispute, that at all relevant times HCC paid Plaintiffs for all hours worked at the rate agreed upon by HCC and Plaintiffs. (Def.'s CSF ¶ 8; Pl.'s CSF ¶ 8.) During the hearing on the instant motion, counsel for HCC stated that no written employment contract existed between HCC and Plaintiffs, but that Plaintiffs were paid in accordance with an agreed-upon amount between the parties. Thus, the relationship between HCC and Plaintiffs was governed by an express agreement between them as to the same subject matter (their wages) at issue in the instant suit. It is therefore "well settled" that Plaintiffs' unjust enrichment claim cannot lie. See, e.g., AAA Hawaii, LLC v. Hawaii Ins. Consultants, Ltd., Civ. No. 08-00299 DAE-BMK, 2008 WL 4907976 at *3 (D. Haw. Nov. 12, 2008) ("It is . . . well settled in federal courts that equitable remedies are not available when an express contract exists between the parties concerning the same subject matter[.] Hawaii

law has recently endorsed application of this principle as well.") (citing Porter, 169 P.3d at 1007).

Even assuming Plaintiffs' unjust enrichment claim weren't barred by the express agreement as to wages between HCC and Plaintiffs, there is simply no evidence before the Court to support such a claim. Plaintiffs assert that an unjust benefit was conferred upon HCC because HCC did not pay Plaintiffs the bargaining unit wage rates set forth in the 2006 Addendum, even while Hilton paid HCC amounts which were based upon that bargaining unit wage rate. HCC counters that, after 2007, Hilton never increased contract payments to HCC for the purpose of increasing Plaintiffs' wages.

Plaintiffs have introduced evidence that after the 2009 Services Agreement expired, HCC's proposed contract renewals included language suggesting that HCC was seeking price increases to compensate it for the mandatory union wage rate schedule. For example, in a June 7, 2007 letter to Hilton enclosing a proposed new contract, HCC Vice President Laura Valhuerdi writes "[i]t is understood that the pricing schedule (in consideration for the contracted scope of work described herein) is and shall remain consistent and directly proportionate to the mandatory union wage rate schedule in place . . . ." (Pl.'s CSF, Ex. 2 at 1.) This language is also included in the contract proposal itself. (Id. at 69, 76, 83.) Several subsequent revised proposals governing

various services also included similar language. (Id. at Exs. 4-7.) Moreover, in a July 29, 2011 letter to Hilton, Mr. Allen writes that "the new wage rate requirements, as well as the absence of the discount given in exchange for bundling, have resulted in a 9% increase." (Id., Ex. 10 at 1.) The letter appears to be in response to Hilton voicing concerns over the rising cost of the contracts between the two, (id.,) thus indicating that HCC was, in fact, raising the prices it charged Hilton (at least in part) to cover rising union wage rate requirements. Plaintiffs have also submitted additional emails exchanged between Hilton and HCC employees indicating that the union wage rate requirements continued to be a consideration in contract negotiations through 2012. (Id., Exs. 11-15.)

HCC points out, however, that all of these statements are taken from pricing proposals and bids that HCC sent to Hilton, rather than actual contracts. (Reply at 11.) Plaintiffs have produced no evidence that Hilton actually accepted any of the bids and paid higher prices so that HCC would pay higher wages. (Id.) Moreover, William Allen, the President of HCC, testified in his deposition that he was not aware of any occasion on which Hilton paid HCC to compensate it for the union wage rate schedule, but HCC kept the money instead of paying it to its employees. (Pl.'s CSF, Ex. 1 (Allen Depo.) at 24.) In his deposition, Mr. Allen stated that he believed that HCC had paid

its employees according to the minimum union rate schedule on two occasions: in November of 2006 and May of 2007. (Id.) Mr. Allen stated that, for the November 2006 wage increase, HCC was "compensated for it" through a "price increase."[6/] (Id. at 30.) For the May 2007 wage increase, Mr. Allen stated that he wasn't sure if Hilton had compensated HCC, and that "[t]hey may not have."[7/] (Id.)

Thereafter, Mr. Allen states, HCC did not give any further wage increases based on the union wage rates between 2007 and 2013.[8/] (Id. at 26, 51.) Mr. Allen testified that, after the first two wage rate increases, Hilton was "unwilling[] to give us any type of increases" and, therefore, HCC stopped making wage increases pursuant to the union wage rate schedule at that point. (Id. at 28, 32.) Plaintiffs have introduced no evidence to

_____

[6/] In a seemingly contradictory statement, Mr. Allen stated in his declaration in support of the instant motion that Hilton never increased any contract payments to HCC under any of the Services Agreements based on the 2006 Addendum. (Def.'s CSF, Allen Decl. ¶ 11.)

[7/] As noted above, by its own terms the 2006 Addendum expired on May 31, 2007. (Def.'s CSF, Ex. C.)

[8/] The Court notes that Plaintiffs have attached to their concise statement of facts only a partial, and heavily edited, copy of the transcript of Mr. Allen's deposition. It is therefore difficult, at times, to determine the entire context and import of some of his statements. Nevertheless, as discussed below, based on the evidence the Court actually has before it, the Court concludes that there is no evidence supporting Plaintiffs' assertion that HCC was unjustly enriched when it failed to pay the CBA-mandated union wage rates.

contradict Mr. Allen's testimony. Specifically, even though Plaintiffs acknowledged at the hearing on the instant motion that they obtained through discovery all of the invoices between Hilton and HCC, Plaintiffs have nevertheless been unable to produce any evidence demonstrating that, at any time after May of 2007, Hilton paid HCC higher prices on the assumption that HCC would pay its employees the union wage rates. Thus, even if Plaintiffs' unjust enrichment claim weren't barred by the existence of an express agreement between HCC and Plaintiffs as to their wages, Plaintiffs have failed to produce any evidence raising a genuine issue of fact as to that claim. The Court therefore GRANTS the motion as to Plaintiffs' third cause of action.

## **CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendant Hawaii Care and Cleaning, Inc.'s Motion for Summary Judgment.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, April 28, 2015



_____
Alan C. Kay
Senior United States District Judge

Balboa et al. v. Hawaii Care and Cleaning Inc., Civ. No. 14-00009 ACK RLP, Order Granting Defendant's Motion for Summary Judgment.

23